# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**EVELYN VELEZ RIVERA,**

      **Plaintiff,**

**-vs-**                                                      **Case No. 6:14-cv-0067-Orl-DAB**

**COMMISSIONER OF SOCIAL SECURITY,**

      **Defendant.**

_____

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying her claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits under the Act.

The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case. Oral argument has not been requested.

For the reasons that follow, the decision of the Commissioner is **AFFIRMED**.

## I.   BACKGROUND

### A.   Procedural History

Plaintiff filed for a period of disability, DIB and SSI benefits on May 3, 2011, alleging an onset of disability on July 23, 2011[1], due to lower back problems and herniated discs, knots in back, high blood pressure, left arm injury, and varicose veins. R. 49, 164-73, 186, 189-90. Her application

---

[1] At the hearing, Plaintiff amended the onset date of disability from April 21, 2011. R. 10.

was denied initially and upon reconsideration. R. 104-14, 119-28. Plaintiff requested a hearing, which was held on August 13, 2012, before Administrative Law Judge Philemina M. Jones (hereinafter referred to as "ALJ"). R. 23-61, 129. In a decision dated August 30, 2012, the ALJ found Plaintiff not disabled as defined under the Act through the date of his decision. R. 7-22. Plaintiff timely filed a Request for Review of the ALJ's decision, which the Appeals Council denied on November 27, 2013. R. 1-5. Plaintiff filed this action for judicial review on January 15, 2014. Doc. 1.

**B.     Medical History and Findings Summary**

Plaintiff was born April 29, 1956 and completed two years of college and has the ability to read, speak, and understand English. R. 164, 189, 191. Plaintiff has past work experience as a cafeteria worker, a production worker/assembler, an airport screener, a security guard and an ampoule sealer. R. 56.

At the August 13, 2012 hearing, Plaintiff testified that she experienced constant low back pain and she cannot sit longer than an hour at a time; she elevates her legs for an hour at a time about five or six times a day to relieve her pain; she could walk about an hour before she would have to stop due to pain; and due to her pain, she had "to keep moving myself in different positions, and the only time that I have a real nice relief is when I left [sic] my legs up." R. 43-46. Plaintiff had to stand up while she was testifying at the fifty-two minute hearing. R. 46. Plaintiff further testified that the upper part of her left arm was frozen and she had difficulty grabbing objects with her hand due to decreased strength; however, she had not seen a provider for her left arm since December 2011. R. 34-35, 39. Due to her pain, she testified, she had difficulty focusing and staying on task. R. 50-51.

Plaintiff's medical history is set forth in detail in the ALJ's decision. By way of summary, Plaintiff complained of lower back and disc problems, left arm/shoulder injury, carpal tunnel syndrome on the right (with release surgery), high blood pressure, depression, and varicose veins.

R.48-54, 189-90. After reviewing Plaintiff's medical records and Plaintiff's testimony, the ALJ found that Plaintiff suffered from left arm rod replacement and history of back surgery, which were "severe" medically determinable impairments – her depression was non-severe – and she did not have an impairment severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. R. 12-13. The ALJ determined that Plaintiff retained the residual functional capacity (RFC) to perform light work with certain exertional limitations related to her left arm. R. 14. Based upon Plaintiff's RFC, the ALJ determined that she could perform her past relevant work as a security guard and ampoule sealer. R. 17. Accordingly, the ALJ determined that Plaintiff was not under a disability, as defined in the Act, at any time through the date of the decision. R. 17-18.

Plaintiff now asserts three points of error. First, she argues that the ALJ erred by failing to fully and fairly develop the Record because she did not order a new consultative physical evaluation to include Plaintiff's limitations from her left arm injury. Second, she claims the ALJ erred by not including her need to alternate sitting and standing. Third, she asserts that the ALJ erred by improperly applying the pain standard and evaluating her credibility. For the reasons that follow, the decision of the Commissioner is **AFFIRMED**.

## II.   STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th

Cir. 1995), *citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" *Id.* (internal quotation and citation omitted). *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f).

## III.   ISSUES AND ANALYSIS

### A.   Ordering a second consultative examination

Plaintiff argues that the ALJ erred in failing to fully and fairly develop the record as she should have ordered a new or updated consultative physical evaluation after she injured her arm in July 2011. The Commissioner responds that the ALJ was not required to obtain another consultative examination report.

Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite her impairments. 20 C.F.R. § 404.1545(a); *Lewis v. Callahan*, 125 F.3d 1436,1440 (11th Cir. 1997). The focus of this assessment is on the doctor's evaluation of the claimant's condition and the medical consequences thereof. *Id.* Under the Social Security regulations, an ALJ has discretion to order a consultative examination where he or she deems it is warranted. 20 C.F.R. § 404.1517. Because of the Commissioner's duty to develop the medical record fully and fairly "it is reversible error for an ALJ not to order a consultative examination when such an evaluation is necessary for [the ALJ] to make an informed decision." *Holladay v. Bowen,* 848 F.2d 1206, 1209 (11th Cir.1988); *Reeves v. Heckler,* 734 F.2d 519, 522 n. 1 (11th Cir.1984) (failure to order such an evaluation may be reversible error).

In this case, the ALJ accorded "great weight" to the opinion of the consultative examiner, Dr. Grant (R. 15) who examined Plaintiff on June 21, 2011. R. 287-90. Plaintiff argues that when she applied for disability benefits, she initially alleged her disability began on April 21, 2011 (R. 164); however, at the administrative hearing she amended her alleged onset date to July 23, 2011, which was the date of her slip and fall accident. R. 10, 26. Plaintiff thus argues the ALJ failed to properly consider the amended onset date when evaluating her claim because she relied on Dr. Grant's medical opinion that were rendered prior to her amended alleged onset date and prior to Plaintiff's slip and fall accident. She argues that the consultative examination was deficient because Dr. Grant could not have considered the effects of her fall and the functional limitations arising from her left arm because the injury happened after the consultative examination.

Plaintiff points to her testimony that the upper part of her left arm is "frozen," she has difficulty grabbing objects with her hand due to decreased strength, and she has not seen a doctor for her left arm since December 2011. R. 34-35, 39.  At her last examination in December 2011, Plaintiff argues, the updated x-rays revealed she had impingement syndrome and her doctor opined that she would "do well with a manipulation under anesthesia," but Plaintiff did not have the procedure and her condition did not improve.  R. 297.  Plaintiff argues that she should have been evaluated by a medical expert because necessary information was missing from the record and the ALJ could not make an informed decision without this information.  The Commissioner argues that the ALJ did not err in relying on Dr. Grant's consultative examination report (R. 287) from June 2011 (a month before her arm injury) because the ALJ did not adopt the opinion of any one medical source, but considered the totality of the evidence in arriving at her conclusion on the ultimate question of disability.

The ALJ relied, in part, on Dr. Grant's opinion as to Plaintiff's lumbar spine limitations, however, the ALJ also specifically discussed the opinion of Plaintiff's treating orthopedist, Dr. McAlpin (of New Jersey) that Plaintiff's left arm fracture was healing well and she had "fairly good" strength:

> A review of the record shows that the claimant has a history significant for a left arm rod replacement and a history of back surgery. The claimant has alleged that as of July 23, 2011, she has heen unable to work because of her medical condition; however, the record provides little support for the allegation of disability. She has a history of a prior back injury and had surgery without any complications in November 2009 (Exhibits lF, 2F, and 3F). The claimant returned to work shortly after surgery and treatments dated prior to the amended alleged disability onset date do not show significant findings (Exhibits lF, 2F, 3F and 4F).
>
> The undersigned notes that physician Carole Grant, M.D., also reported physical examination findings that do not support the claimant's allegation of unrelenting pain symptoms (Exhibit SF). Dr. Grant conducted a consultative examination on June 21, 2011, at the request of the State agency. The musculoskeletal examination showed only mild tenderness to palpation of the thoracolumbar paravertebral lumbar muscles but there was no muscle tenderness or evidence of spasm. Dr. Grant noted that the claimant had multiple superficial varicosities in both lower extremities. However, the examination further showed that there was no tenderness, swelling, cyanosis, or

clubbing of the upper and lower extremities. The claimant retained five-out-of-five motor strength throughout all major muscle groups. The claimant's gait was normal and she ambulated without the use of an assistive device. The claimant was only able to partially squat because of low back pain. She was able to heel and toe walk. The neurological examination was normal with no muscle atrophy or tremors noted. The claimant's sensation and coordination was intact and straight leg testing in the seated and supine positions was negative.

In July 2011, the claimant had a slip-and-fall accident. The claimant sustained a left midshaft humerus fracture and required an internal fixation under general anesthetics on August 4, 2011 (Exhibit 8F/11-21). Postoperative treatment notes show that the claimant's fracture site was healing "very well" with no signs of loosening or prominence of the hardware. The claimant was advised to do a home exercise program including physical therapy. The claimant reported some stiffness and pain symptoms. Her treating orthopedist Fred McAlpin, III, D.O., noted that she had more discomfort when she tried to abduct greater than about 60 to 70 degrees. In addition, the claimant had "fairly good" strength with the arm by her side. According to treatment notes dated December 20, 2011, Dr. McAlpin noted that her forward flexion was approximately 100 degrees and she had minimal internal and external rotation (Exhibit 8F/2). However, the claimant did not demonstrate tenderness over the fracture site or significant discomfort.

In assessing the claimant's physical limitations, the undersigned considered the opinion of State agency medical consultant Minal Krishnamurthy, M.D., who concluded that the claimant could perform light work activity (Exhibit 1OF). Dr. Krishnamurthy's opinion is accorded some weight because the undersigned assessed a more restrictive residual functional capacity incorporating the claimant's left arm injury. As for the findings and opinion of Dr. Grant, who had the benefit of examining the claimant during the physical consultative examination, the undersigned accorded it great weight. Dr. Grant opined that the claimant's subjective complaints were consistent with the objective medical findings (Exhibit 4F). The undersigned notes, however, that Dr. Grant's abnormal finding on physical examination was generally limited to mild tenderness to palpation of the thoracolumbar paravertebral lumbar muscles. On the other hand, the claimant retained five-out-five motor strength throughout the musculoskeletal system, and her neurological functioning was grossly intact.

The undersigned finds that the claimant's allegations are not entirely credible. The objective findings support the complaints of back pain and left arm limitations; however, the record does not support incapacitating limitations. In 2010, the claimant reported that she had to sit with her legs propped up but the undersigned underscores that this was two years ago and she has not sought additional treatment. Furthermore, the consultative examination findings do not support her allegations (Exhibit 5F). The claimant reported that she was not able to receive specialized treatment because she could not financially afford it, however a review of the medical file does not indicate that she sought treatment or assistance from a local county health department or that

> she sought emergency care for the allegedly disabling pain symptoms. In fact, the claimant admitted this during the hearing. . . .
>
> The undersigned finds that although the claimant had a left arm rod replacement surgery and back surgery, her condition has not resulted in a compromise of a nerve root or the spinal cord with evidence of nerve root compression characterized by neuro-anatomic distribution of pain, atrophy with associated muscle weakness or muscle weakness accompanied by sensory or reflex loss and, or positive straight-leg raising test. In reaching the conclusion as to the claimant's residual functional capacity, the undersigned finds the claimant credible to the extent she would experience pain with heavy lifting with the left arm or raising the left arm above shoulder level. The residual functional capacity was, accordingly, reduced to accommodate those limitations.

R. 15-16.

The ALJ specifically cited the findings of the consultative examiner Dr. Grant, who noted on examination that Plaintiff had mild tenderness to palpation of the lumbar muscles but there was no muscle tenderness or evidence of spasm; she retained five-out-of-five motor strength throughout all major muscle groups; her gait was normal and she ambulated without the use of an assistive device; and she had no neurological abnormalities or muscle atrophy or tremors. R. 289-90. Although the ALJ relied on Dr. Grant's report in her decision (R. 15-16), she also specifically relied on the medical records and opinion evidence from Plaintiff's treating orthopedist, Dr. McAlpin, who treated her left arm injury and performed the subsequent surgery. Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise. *See Lewis v. Callaghan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991); 20 C.F.R. § 404.1527(d). If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2). When a treating physician's opinion does not warrant *controlling* weight, the ALJ must nevertheless weigh the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) the nature

and extent of the treatment relationship; 3) the medical evidence supporting the opinion; 4) consistency with the record as a whole; 5) specialization in the medical issues at issue; 6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(d). However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984); *see also* 20 C.F.R. § 404.1527(d)(2).

The Commissioner contends the record contains sufficient evidence for the ALJ to make a decision in this matter without a second consultative examination based on the records of Plaintiff's treating specialist in the Record. A consultative examination will be ordered in accordance with SSA regulations only if the Agency has determined that additional information is needed and is not available from the claimant's records. An ALJ is not required to order a consultative examination or obtain medical expert testimony when the record contains sufficient evidence for the ALJ to make an informed decision. *Doughty v. Apfel*, 245 F.3d 1274, 1281 (11th Cir. 2001); *Holladay v. Bowen*, 848 F.2d at 1210 (11th Cir. 1988). A consultative examination need not be obtained to establish absolute certainty regarding a claimant's condition, as the Social Security Act requires only substantial evidence to support the ALJ's findings.

Plaintiff's slip-and-fall accident occurred on July 23, 2011, in which she fell on her left arm and went to the Regional Medical Center immediately; doctors there took x-rays, put her arm in a sling, and referred her to an orthopedist. R. 305. She saw Dr. McAlpin who performed surgery with rod placement to her left arm on August 4, 2011. R. 302, 305. In August 2011, Dr. McAlpin (and/or his Physician's Assistant Mr. Gray[2]) saw her in a follow up visits two and four weeks after the surgery and noted the arm was "a little sore" with a "little tightness with elbow flexion and extension." R. 301. Thirteen weeks after surgery, in November 2011, she denied any interval complaints or injuries,

---

[2]Mr. Gray dictated the treatment notes. R. 302.

-9-

but she was still having difficulty with her range of motion although she was going to physical therapy and doing home exercises; she had full range of motion at the elbow. R. 299. At the end of November 2011, Plaintiff reported she was doing therapy to improve her motion but she felt "a lot of stiffness with not a tremendous amount of pain" – she had "a little sensitivity at the proximal arm but not sharp pain." R. 298. Dr. McAlpin ordered an x-ray which he felt would be helpful to determine the integrity of her healing as well as any impingement that might be secondarily causing some of her issues, but she was to finish out some of her therapy modalities. R. 298. Four months after the surgery, in December 2011, Plaintiff' arm was healing "very well" with no tenderness over the fracture sight and had no significant discomfort, but forward flexion was limited to approximately 100 degrees as well as very minimal internal and external rotation. R. 297. The ALJ properly discussed Dr. McAlpin's records and accounted for Plaintiff's left arm limitations in determining Plaintiff's RFC. Noting Plaintiff is right hand dominant, the ALJ appropriately limited Plaintiff's RFC to lifting no more than ten pounds with her left arm and hand, and raising her left arm only to shoulder level. R. 14. The ALJ's RFC determination took into account Plaintiff's stated limitations in her left arm that the upper part of her left arm is "frozen," she has difficulty grabbing objects with her hand due to decreased strength, and her condition had not changed since December 2011 (R. 34-35, 39) and is based on substantial evidence.

### B. Alternate sitting and standing

Plaintiff claims that the ALJ did not apply the correct legal standard to Plaintiff's need to alternate sitting and standing, and include it in Plaintiff's RFC. Plaintiff contends that the evidence of record indicates she needs to frequently change positions between sitting and standing, and under the SSR 83-12, the ALJ should have included this requirement in the RFC. The Commissioner argues that Plaintiff failed to establish she needed a sit-stand option.

Pursuant to the SSR 83-12,

> In some disability claims, the medical facts lead to an assessment of RFC which [is] compatible with the performance of either sedentary or light work except that the person must alternate periods of sitting and standing. The individual may be able to sit for time, but must then get up and stand or walk for awhile before returning to sitting. Such an individual is not functionally capable of doing either the prolonged sitting contemplated in the definition of sedentary work (and for the relatively few light jobs which are performed primarily in a seated position) or the prolonged standing or walking contemplated for most light work.

SSR 83-12 (http://www.socialsecurity.gov/OP_Home/rulings/di/02/SSR83-12-di-02.html).

Plaintiff argues that she has severe back pain that could cause her to shift positions. As evidence of this circumstance, she had to stand up while testifying at the fifty-two minute hearing. R. 46. She also points to her testimony that, due to her pain, she had "to keep moving myself in different positions,

and the only time that I have a real nice relief is when I left [sic] my legs up"(R. 46) and reports in her medical records and SSA forms that during the day she needed to change positions from sitting, standing and walking to remain comfortable, and she could not sit, stand, or walk for long periods. R. 208, 258. She also cited the note of a Social Security field worker who observed her on May 16, 2011 having difficulty sitting, standing, and walking. R. 187. Additionally Dr. Grant's June 21, 2011 examination noted Plaintiff's report that she experienced constant pain in the low back which increased with prolonged sitting and standing, bending, lifting and twisting; she had to frequently change positions because of the pain. R. 287.

The Commissioner argues that Plaintiff has not demonstrated she requires a sit-stand option, and the medical evidence does not support Plaintiff's uncorroborated allegations that she needs a sit-stand option. The Commissioner cites the general proposition that an ALJ is not required to instruct the VE to assume conditions she does not find exist.

Although Plaintiff did testify that her pain increased with sitting and standing, and her complaint is in the notes from August 2010, she fails to point to any limitation from a physician with

-11-

a requirement that she have the ability to sit-stand when necessary.   Plaintiff continued to work outside as a security guard in August 2010, despite her complaints, and sought medical care for "tingling and fatigue" working outside as security; doctors believed her complaints were most likely due to heat, and she was given a doctor's note that she "needs frequent breaks" and should "work inside whenever possible."  R. 282, 284.  Plaintiff continued to work until April 2011 as a security guard.  R. 78.  As the ALJ noted Plaintiff "had returned to work shortly after surgery and treatments dated prior to the amended alleged disability onset date [July 2011] do not show significant findings."  R 15.  In addition, for the reasons more fully explained above, the ALJ's determination of Plaintiff's RFC is based on substantial evidence.

### C.    Pain and credibility.

Plaintiff asserts that the ALJ erred in evaluating her allegations of pain and limitations.  Here, the ALJ found Plaintiff "statements concerning the intensity, persistence and limiting effects of these symptoms were not credible to the extent they were inconsistent with" the ALJ's RFC assessment.  R. 15.  The Commissioner argues the ALJ articulated cogent reasons for discounting Plaintiff's credibility, based on her careful review of the medical records.

Pain is a non-exertional impairment.  *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).  The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. § 404.1528.  In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Foote*, 67 F.3d at 1560 (quoting *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)). Pain alone can be disabling, even when its existence is unsupported by objective evidence, *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

> The ALJ summarized Plaintiff's testimony regarding her limitations as follows:
>
> The claimant alleged disability arising from lower back problems, herniated discs, high blood pressure, varicose veins, and depression. She related that she sustained a back injury in 2007 and had surgery in 2009. The claimant testified that she was able to return to work but had to quit working in 2011 because she could not perform her job duties due to chronic low back pain. The claimant testified that she was unable to sit, stand, or walk for prolonged periods because of pain symptoms. She explained that she could only sit for one hour at a time, and stand and walk for two and a half hours at a time. She indicated that she had to elevate her legs five times a day to alleviate pain symptoms. The claimant testified that she fell in July 2011 and broke her arm. She stated that she had a rod placed in her left arm. She indicated that she was unable to completely lift her left arm overhead or lift a gallon of milk with the left hand. She testified that she was right hand dominant. . . . She stated that she has not received treatment from her primary care doctor since April 2011 and that she has not sought low or no cost medical treatment. The claimant testified that she was able to tend to her personal hygienic needs, prepare meals, clean her room, wash dishes, and do laundry. The claimant stated that during a typical day, she cleaned her room, prepared meals, watched television, and read. She related that she attended church twice a week.
>
> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

R. 14-15.

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. As a matter of law, the failure to articulate the reasons for discrediting subjective pain testimony requires that the

testimony be accepted as true. *Foote*, 67 F.3d at 1561-62; *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

In this case, the ALJ specifically referred to the Eleventh Circuit's pain standard, thus, she clearly was aware of the governing standards for evaluating subjective complaints because she cited the appropriate case law (*e.g., Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)), the applicable regulations and the applicable Social Security Ruling 96-7p. R. 14. The ALJ determined that Plaintiff had an objective medical condition that could give rise to the alleged symptoms and then assessed the credibility of the alleged complaints. In discussing Plaintiff's RFC, the ALJ stated:

> A review of the record shows that the claimant has a history significant for a left arm rod replacement and a history of back surgery. The claimant has alleged that as of July 23, 2011, she has been unable to work because of her medical condition; however, the record provides little support for the allegation of disability. She has a history of a prior back injury and had surgery without any complications in November 2009 (Exhibits lF, 2F, and 3F). The claimant returned to work shortly after surgery and treatments dated prior to the amended alleged disability onset date do not show significant findings (Exhibits lF, 2F, 3F and 4F).
>
> * * *
>
> [T]he undersigned cannot find the claimant's allegations that she is incapable of all work activity to be credible because of significant inconsistencies in the record as a whole. Specifically, the medical evidence demonstrates that she has not required inpatient hospitalizations, recurrent emergency room visits, crisis center visits, prolonged physical therapy, or chronic pain management treatment. The undersigned further notes that the claimant's activities of daily living are self-restricted, as no treating source has advised her to stay home all day and elevate her legs five times a day. More importantly, the claimant has not been advised to refrain from performing all gainful work activity. Despite the self-restricted activities of daily living, the record evinces that the claimant has good activities in that she is self-reliant with personal hygiene tasks, prepares simple meals, and is able to perform household chores. After carefully considering the entire record, the undersigned finds that the objective medical evidence and opinions discussed herein fail to support the extent and severity of the limitations as alleged by claimant. Accordingly, the undersigned finds that the evidence of record is [devoid] of compelling documentation suggesting that the claimant's condition is so severe as to totally prevent her ability to perform a range of light work activity.

R. 16-17.  Consequently, the ALJ found Plaintiff was capable of performing her past relevant work as a security guard and ampoule sealer, and was, therefore, not disabled.  R. 17.

Plaintiff argues that the ALJ erred in characterizing her back/leg complaints (in 2010) as not leading her to seek further treatment, when she actually did complain that she had to sit with her legs propped up when seeking treatment before her alleged onset date in July 2011.  The Commissioner argues in response that the ALJ based her discounting of Plaintiff's necessity to have her legs up in finding that Plaintiff's back "condition has not resulted in a compromise of a nerve root or the spinal cord with evidence of nerve root compression characterized by neuro-anatomic distribution of pain, atrophy with associated muscle weakness or muscle weakness accompanied by sensory or reflex loss and/or positive straight-leg raising test."  R. 16.  As discussed above, the ALJ's determination with regard to Plaintiff's back condition and  limitations was based on substantial evidence; thus, her discounting of Plaintiff's resultant need to have her legs up was also based on substantial evidence.  Moreover, the Court does not find its prior decision regarding the administrative law judge's consideration of a claimant's credibility in *Wolfe v. Commissioner of Social Security Administration*, No. 6:11-1316, 2012 WL 3264916, at * 6 (M.D. Fla. Aug. 10, 2012), to be apposite to the instant set of facts.

Plaintiff further argues that, after she testified she did not have the financial resources to see the necessary specialists (R. 35),  the ALJ erred in failing to develop the record as to whether county health department resources were actually available to her.  She contends that because poverty will excuse a lack of additional treatment for pain symptoms, citing Eleventh Circuit caselaw, thus, the ALJ erred in failing to question her about the availability of a local county health department.  Doc. 16 at 16.  Although the ALJ did not question Plaintiff about the availability of a local county health department, Plaintiff fails to argue on appeal that there is no county health department available.  Plaintiff resides in St. Cloud, Osceola County, Florida.  R. 7.  The Court takes judicial notice that The

Osceola Health Department makes health care publicly available in that county. The ALJ's credibility finding on this point is supported by substantial evidence.

Plaintiff's last argument is that the ALJ should not have relied on Plaintiff's daily activities – "self-reliant with personal hygiene tasks, prepares simple meals, and is able to perform household chores" – to find her testimony not credible. R. 17. Plaintiff cites the Eleventh Circuit's decision in *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997) for the proposition that "participation in everyday activities of short duration, such as housework or fishing, [does not] disqualif[y] a claimant from disability." The Commissioner cites SSR which entitle the ALJ, in making a credibility evaluation, to consider objective medical evidence and information from the Plaintiff and treating or examining physicians, as well as other factors such as evidence of daily activities, the frequency and intensity of pain, any precipitating or aggravating factors, medication taken and any resulting side effects, and any other measures taken to alleviate the pain. Doc. 17 at 9. The ALJ offered specific reasons for discrediting Plaintiff's subjective complaints, including inconsistencies between her pain reports and the examination findings, as well as inconsistencies between her statements and her habitual activities of daily living, which are the specific factors the ALJ is directed to consider. 20 C.F.R. §§ 404.1529; 416.929. The ALJ's credibility determination is supported by substantial evidence.

## IV.  CONCLUSION

The record in this case shows that Plaintiff does not enjoy full health and that her lifestyle and activities are affected by her ailments to some degree. The ALJ appropriately considered these circumstances and analyzed them in relation to the exacting disability standard under the Social Security Act. For the reasons set forth above, the ALJ's decision is consistent with the requirements of law and is supported by substantial evidence. Accordingly, the Court **AFFIRMS** the

Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g).  The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Orlando, Florida this 30th day of December, 2014.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record